UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| L.O.D.C. GROUP, LTD. | § |
| | § |
| v. | § Civil Action No. 4:23cv691 |
| | § Judge Mazzant |
| SYNERGY CHC CORP and | § |
| JACK ROSS | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff, L.O.D.C. Group, Ltd., ("Lily"), files its Second Amended Complaint against Defendants Synergy CHC Corp ("Synergy") and Jack Ross ("Ross"), and states:

### I. PRELIMINARY STATEMENT

1. Lily is a private label manufacturer of nutritional supplements and personal care products. Between March 25, 2020, and May 26, 2020, Synergy issued a series of purchase orders to Lily seeking to purchase 15 million bottles of hand sanitizer at a total cost of nearly $11 million. Ultimately, Lily delivered to Synergy approximately 8.5 million bottles of hand sanitizer. However, Synergy instructed Lily to stop production in September 2020, thereby breaching the agreement between the parties. Additionally, Synergy induced Lily to manufacture additional products for Synergy with false assurances of prompt payment. Lily manufactured and delivered the goods which Synergy accepted and Synergy has refused to pay for them. Accordingly, Lily has been forced to file this action to recover its damages.

### II. PARTIES

2. L.O.D.C. Group, Ltd. Lily is a Texas limited partnership with its principal place of business located in Denton County, Texas. Lily has three limited partners, each of whom is a natural person and each of whom is a resident and citizen of Texas. Lily's sole general partner

is a Texas corporation with its principal place of business in Texas.  Accordingly, for diversity purposes, Lily is a citizen of Texas.

3. Synergy CHC Corp.  Synergy is a Nevada corporation with its principal place of business in Maine.  Accordingly, for diversity purposes, Synergy is a citizen of both Nevada and Maine.

4. Ross is an individual resident and citizen of Maine.  Ross may be served with summons at 865 Spring Street, Westbrook, Maine 04092.

### III.  JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00.

6. This Court has personal jurisdiction over Synergy pursuant to the Texas Long Arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, et seq. because Synergy entered into a contract with Lily, a Texas resident, and either party was to perform the contract in whole or in part in Texas.

7. This Court has personal jurisdiction over Ross pursuant to the Texas Long Arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, et seq. because Ross committed a tort in whole or in part in Texas by the fraudulent conduct set forth below.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1446(a) in that: (i) Lily originally filed this action in the Denton County, Texas District Court; and (ii) this is the district court of the United States for the district and division within which this action was pending.

### IV.  APPLICABLE FACTS

9. Lily is a manufacturer of nutritional supplements and foods.  In early 2020, Lily took steps to produce hand sanitizer in response to the demand caused by the Covid-19

pandemic. At that time, Synergy approached Lily about placing several large orders for hand sanitizer. On March 25, 2020, Synergy issued a purchase order to Lily for 1,000,000 2-ounce bottles of hand sanitizer. Thereafter, between April 8, 2020, and May 26, 2020, Synergy issued five additional purchase orders totaling an additional 14 million 2-ounce bottles of hand sanitizer.

10. Synergy informed Lily it had demand for millions of bottles of hand sanitizer per month. However, due to the Covid-19 pandemic, components for hand sanitizer production were in short supply. In order to acquire the necessary components to meet Synergy's stated demand, Lily would be required to make substantial commitments to its vendors. Accordingly, Lily required Synergy to place purchase orders before Lily would commit to acquire the needed components. Additionally, Lily informed Synergy that, due to supply chain issues and manufacturing capacities, Lily could not guarantee a delivery schedule and that delivery would occur on a rolling basis. Synergy was informed and knew that Lily was acquiring the necessary raw materials and packaging supplies required to fill the orders.

11. All went well for a while. Between May and August 2020, Lily manufactured over 8.5 million bottles of hand sanitizer for Synergy. However, on September 1, 2020, Synergy instructed Lily to temporarily halt production of its hand sanitizer. Synergy has never authorized Lily to resume production thereby repudiating is agreement to purchase the balance of its order.

12. At the time Synergy instructed Lily to halt production, Lily had approximately 6 truckloads of finished products in its warehouse ready to be delivered to Synergy.

13. In order to encourage Synergy to take delivery of the 6 truckloads of finished product, Lily eventually offered to sell those loads to Synergy at a reduced price. Lily agreed to this because the products were taking up valuable space in Lily's warehouse. Synergy agreed to

take 3 truckloads in the spring of 2021.  Lily delivered the last 3 truckloads between December 2021 and January 2022.  However, Synergy did not timely pay Lily's invoices for the last 3 truckloads.

14. Lily acquired significant quantities of raw materials and packaging supplies to fill Synergy's hand sanitizer orders. As a result of Synergy's repudiation of its remaining orders, Lily has no use for the remaining of such raw materials and packaging supplies, most, if not all of which, are beyond their useful expiration dates.

15. On January 6, 2022, Jack Ross ("Ross"), the Chairman and CEO of Synergy, requested Jack Brown ("Brown"), Lily's V.P. of Sales & Marketing, to set up a call to discuss ordering a 2 oz. product called Focus Factor.  As of January 2022, Synergy was indebted to Lily in the amount of $554,189.44 for hand sanitizer that Lily had manufactured for and delivered to Synergy.

16. The requested call occurred on or about January 18, 2022.  On the call were Ross and Brown.  During the call, Ross requested Lily to produce approximately 500,000 bottles of Focus Factor, a product that Lily had manufactured for Synergy before, on net 30 days terms. Because of Synergy's failure to honor its previous obligations, Brown informed Ross that he could not say whether Lily would agree to manufacture the Focus Factor.  Ross asked whether Lily would provide 30 day terms if Synergy paid the outstanding balance for the hand sanitizer. Brown told Ross that he would have to discuss the matter with Lily's CFO and CEO.  Ross then asked Brown to obtain costing for the potential Focus Factor order.  Over the next few weeks, Lily compiled pricing information for the potential focus factor order which was shared with Synergy.

17. On March 7, 2022, Ross requested another call with Brown and Halford. That call took place on March 7, 2022. Ross, Brown and Halford were on the call. During the call, Ross asked whether Lily would accept the Focus Factor order that the parties had been discussing for several weeks and provide Synergy with net 30 day terms on the new order if Synergy paid the outstanding invoices for hand sanitizer. Additionally, in order to induce Lily to provide the requested terms, Ross represented that, if Lily did so, Synergy was prepared to make the hand sanitizer payment immediately and could and would pay any Focus Factor invoices within thirty days of the invoice. Ross further stated that he anticipated that Synergy would place additional orders for Focus Factor in the future. In reliance on Ross' representation that Synergy could and would pay for the Focus Factor within 30 days of invoice, Halford informed Ross that, if Synergy made the hand sanitizer payment, then Lily would accept the order.

18. On March 7, 2022, Synergy delivered a purchase order for 550,008 bottles of Focus Factor (the "PO") to Lily. The PO called for delivery no later than April 4, 2022. Within 15 minutes of receiving the PO, Brown informed Ross that Lily could not agree to an April 4 shipping date and provided a general guideline for timing of delivery of the order. Later in the day on March 7, 2022, Synergy paid the balance of the hand sanitizer invoices totaling $554,189.44. Based upon Synergy's payment of the outstanding hand sanitizer invoices and Ross' assurance that Synergy could and would pay for the Focus Factor within 30 days of invoicing, Lily accepted the order and began the process required to manufacture and deliver the product.

19. Between July 11 and 18, 2022, Lily delivered the Focus Factor order to Synergy and issued invoices totaling $394,932.37. Synergy accepted the Focus Factor and has never

rescinded that acceptance or raised any issues with respect to the order. The Focus Factor was delivered to Synergy pursuant to the delivery timeline provided by Brown on March 7, 2022.

20. On August 15, 2022, Halford sent an email to Ross reminding him that Lily's invoices would be due that week and requesting that he indicate when payment would be made. Ross did not respond to the August 15 email. On August 29, 2022, Brown forwarded the August 15 email to Ross again, informing him that Synergy's invoices were more than 30 days overdue and requesting that he inform Halford when payment would be made. The next day, Ross indicated he was on vacation and would review the matter "the minute" he got back. Ross did not further respond to either the August 15 or August 29 emails.

21. On September 8, 2022, Brown sent Ross an email expressing frustration that the invoices were approaching 60 days overdue. Brown requested again that Ross contact Halford and let him know when the invoices would be paid. Ross did not respond to the September 8 email. On September 13, 2022, Brown sent another email to Ross asking him why he was ignoring Lily's emails. Again, Brown asked Ross to indicate when the invoices would be paid. On September 15, 2022, Ross responded to the September 13 email by indicating that he would call Halford the following morning. Ross did not call Halford.

22. Accordingly, on September 19, 2022, Halford sent Ross an email demanding payment of the outstanding invoices. On September 21, 2022, Ross responded to the September 19 email and stated that Lily would get paid the following Friday. However, again no payment was made. Halford continued to request confirmation that payment would be made. On November 2, 2022, Ross emailed Halford stating that "it won't be much longer for sure" before Synergy paid the outstanding invoices. On November 23, 2022, Brown requested an update on payment. The next day Ross responded saying he would have more information the following

week. No further information was provided the following week. On December 8, 2022, Brown again requested that Ross provide an update on when Synergy would pay the invoices. The next day, Ross responded that Lily would "for sure get paid before the end of December." The end of December came and went with no payment forthcoming. Ross did not respond to Lily's subsequent requests for the status of payment.

23. Based upon Ross's conduct following delivery of the Focus Factor, his failure to express any problems with the Focus Factor order, his repeated assurances that Lily's payment was imminent, and his failure to articulate any basis for Synergy's failure to pay, Lily believes that, when Ross represented to Halford that Synergy intended to, could and would pay the Focus Factor invoices within 30 days, he either knew that Synergy had no intention of paying those invoices or did not know whether Synergy would be capable of paying those invoices but that he nevertheless made those representations to Halford in order to induce Lily into manufacturing and delivering the Focus Factor to Synergy. Lily relied on such representations by accepting Synergy's order and manufacturing and delivering the Focus Factor. But for such misrepresentations, Lily would not have accepted the order or manufactured and delivered the Focus Factor to Synergy. At all relevant times hereto, the Focus Factor was the property of Lily.

24. The transactions between the parties were for the sale of goods and are governed by Article II of the UCC.

25. All conditions precedent to Lily's right to recovery have occurred or been waived.

## V. CAUSES OF ACTION

**A.     Count One – Breach of Contract**

26. Lily incorporates the preceding paragraphs as if set forth verbatim herein.

27. As set forth above, Synergy entered into contracts with Lily to purchase hand sanitizer and Focus Factor. Lily performed its obligations under such contracts.

28. Synergy failed to perform its obligations under the hand sanitizer contracts by instructing Lily to cease production and failing to take delivery of finished goods. As a result, Synergy repudiated and breached the contract without excuse or justification.

29. Synergy failed to perform its obligations under the Focus Factor contract by failing to pay Lily's invoices for the goods, which Lily delivered, and which Synergy accepted.

30. As a result of the foregoing, Lily has suffered damages within this Court's jurisdictional limits for which Synergy is liable to Lily.

**B.    Count Two - Fraud**

31. Lily incorporates the preceding paragraphs as if set forth verbatim herein.

32. As set forth above, Ross, in his capacity as the CEO of Synergy, made material misrepresentations to Lily in order to induce Lily to manufacture and deliver approximately 500,000 bottles of Focus Factor to Synergy. Specifically, on March 7, 2022, Ross represented to Halford that Synergy intended to, could and would definitely pay any Focus Factor invoices within thirty days of the invoice. In reliance on Ross' representations that Synergy could and would pay for the Focus Factor within 30 days of invoicing, Lily accepted the order, and manufactured and delivered the product. As set forth above, Lily believes that, at the time Ross made such representations, he either knew that Synergy would not pay for the Focus Factor or he did not know whether Synergy could pay for the Focus Factor but nevertheless made such representations with the intent that Lily rely on them and manufacture and deliver the goods. But for such misrepresentations, Lily would not have manufactured and delivered the Focus Factor.

33. Lily reasonably relied on Ross' misrepresentations by manufacturing and delivering approximately 500,000 bottles of Focus Factor to Synergy. Ross was acting in the scope of his employment as the CEO of Synergy when he made such misrepresentations on behalf of Synergy.

34. As a result of such conduct, Lily has suffered damages within this Court's jurisdictional limits in the form of the unpaid purchase price of the Focus Factor for which Ross and Synergy are jointly and severally liable. Additionally, as set forth above, such conduct was intentional and/or fraudulent. Accordingly, Lily is entitled to recover exemplary damages from Synergy and Ross.

**C.     Count Three – Attorneys' Fees**

35. Lily incorporates the preceding paragraphs as if set forth verbatim herein.

36. Lily seeks to recover its reasonable and necessary attorneys' fees incurred herein from both Synergy and Ross as the prevailing party and pursuant to Tex. Civ. Prac. & Rem. Code § 38.001, *et seq.*

## VI.  DEMAND FOR JURY

37. Lily hereby demands a trial by jury on all issues so triable.

## VII.  REQUEST FOR RELIEF

Lily respectfully requests that, upon trial herein, it be awarded the following relief;

a. Compensatory damages including, without limitation, lost profits and incidental damages;

b. The price of the Focus Factor delivered to Synergy pursuant to Tex. Bus. & Comm. Code § 2.709;

c. Exemplary damages;

  d. Attorneys' fees and costs of court; and

  e. Such other relief to which it may show itself to be justly entitled.

**Respectfully Submitted,**

By: /s/ Baxter W. Banowsky
   Baxter W. Banowsky
   State Bar No. 00783593
   bwb@banowsky.com
   BANOWSKY, P.C.
   12801 N. Central Expressway
   Suite 1700
   Dallas, Texas  75243
   Telephone: (214) 871-1300
   Facsimile: (214) 871-0038

**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was served upon all counsel of record contemporaneously with its filing by the Court's ECF system.

                /s/ Baxter W. Banowsky